**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DIESEL S.P.A.**<br>via dell'Industria, 4/6<br>36042 Breganze (VI), Italy,<br><br>                    Plaintiff,<br>       v.<br><br>**COLTON INTERNATIONAL**<br>6081 3 Rd NW Suite 1500<br>Richmond BC V6Y 2B2<br>Canada<br><br>          and<br><br>**HOWARD COLTON**<br>10500 Buttermere Dr<br>Richmond BC V7A4T8<br>Canada,<br><br>                    Defendants. | Civil Action Number _____ |

## COMPLAINT

Plaintiff Diesel S.p.A ("Diesel" or "Plaintiff") by its attorneys, Arent Fox LLP, for its causes of action against Defendants Colton International and Howard Colton (hereinafter, the "Defendants"), alleges upon information and belief as follows:

## NATURE OF THIS ACTION

1.      Defendants sold apparel online that they knew to bear counterfeit Diesel trademarks.  This action arises from their willful and knowing violation of federal and state trademark law.

1

## JURISDICTION AND VENUE

2.      Plaintiff files this action against Defendants for trademark counterfeiting, infringement, dilution, and false designation of origin under the Lanham Trademark Act of 1946, 15 U.S.C. § 1051 *et seq.* (the "Lanham Act"), and related claims of trademark infringement and unfair competition under the common law of the District of Columbia.  This Court has subject matter jurisdiction over the Federal trademark counterfeiting, infringement, and dilution claims under 15 U.S.C. § 1121(a), and 28 U.S.C. §§ 1331 and 1338(a).

3.      This Court has supplemental jurisdiction pursuant to 28 U.S.C § 1367 over the remaining claims arising under the common law of the District of Columbia, and has jurisdiction pursuant to 28 U.S.C. §§ 1338(b) and 1367 for claims under the common law of unfair competition.

4.      This Court has personal jurisdiction over the Defendants because the products that are the subject of this action were, and continue to be, sold and offered for sale to consumers in this Judicial District.

5.      Venue is proper in this Judicial District under 28 U.S.C. § 1391, as a substantial part of the events giving rise to the claims occurred in this district.

## THE PARTIES

6.      Plaintiff Diesel, S.p.A. is an Italian corporation with its principal place of business in Breganze, Italy.  Diesel S.p.A. owns its trademark DIESEL for various goods including numerous men's and women's clothing items.

7.      Upon information and belief, Defendant Colton International is a corporation organized under the laws of the province of British Columbia, Canada, having an office and

place of business at 6081 3 Road NW, Suite 1500, Richmond, British Columbia V6Y 2B2, Canada.

8.      Upon information and belief, Defendant Howard Colton ("Colton") is the founder, president, and CEO of Colton International, having an office and place of business at 6081 No.3 Road NW, Suite 1500, Richmond, British Columbia V6Y 2B2, Canada, and a residential address of 10500 Buttermere Dr., Richmond BC V7A4T8, Canada.  Colton was and is a dominant and active force behind the wrongful acts of Colton International complained of herein, and he has engaged in those acts for his own, and Colton International's, gain and benefit.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### A. The Diesel Brand and its Family of Marks

9.      Diesel is an international manufacturer and retailer of men's and women's clothing, shoes, and accessories.  Diesel is famous for its edgy, high-fashion casual clothing items, especially jeans, and its typical customers are fashion-conscious men and women between twenty and thirty years of age.  Diesel sells its goods through its own specialty retail stores, department stores, catalogs, and via its website, www.diesel.com, throughout the United States, including in the District of Columbia.

10.     Diesel S.p.A. owns and has used for over twenty-five years its trademark DIESEL and various composite trademarks and assorted design components (collectively the "Diesel Marks").  The Diesel Marks include but are not limited to the following marks:

| Reg./App. Number | Citation | Registration Date | Classes |
|---|---|---|---|
| 3838753 | ONLY THE BRAVE | August 24, 2010 | 3 |
| 3956724 | DIESEL BLACK GOLD | May 10, 2011 | 3 9 14 18 25 |
| 3933720 | DIESEL | March 22, 2011 | 9 41 43 |

| 4268431 | DIESEL | January 1, 2013 | 35 45 |
| 4268432 | DIESEL FOR SUCCESSFUL LIVING | January 1, 2013 | 35 45 |
| 3225322 | | April 3, 2007 | 3 9 14 18 25 |
| 3524221 | DIESEL | October 28, 2008 | 11 19 20 21 |
| 2376399 | | August 15, 2000 | 3 9 14 16 18 24 25 |
| 2361005 | | June 27, 2000 | 25 |
| 1989390 | DIESEL | July 30, 1996 | 3 9 14 16 18 24 25 |
| 1939141 | | December 5, 1995 | 3 9 14 16 18 24 25 |
| 1564710 | DIESEL | November 7, 1989 | 25 |
| 1605656 | | July 10, 1990 | 25 |
| 1498698 | DIESEL | August 2, 1988 | 25 |

11.     Diesel has long been manufacturing and selling in interstate commerce high quality clothing and accessories under the Diesel Marks.  These registrations are valid and subsisting and many are incontestable.  Through longstanding use, advertising, and registration, the Diesel Marks have achieved a high degree of consumer recognition and constitute famous marks.  Copies of the Diesel Marks' registration certificates are attached as **Exhibit 1**.

12.     Diesel has continuously used the Diesel Marks in interstate commerce in connection with the sale, distribution, promotion, and advertising of its goods.

13.     As a result of their widespread use, these trademarks have become a symbol of style and of the Plaintiff.  The Diesel Marks have come to be known as source identifiers for high-quality, authentic DIESEL® products.

**B. Defendants' Infringing Conduct**

14.     On or around January 31, 2014, representatives of Diesel observed for sale a pair of men's jeans bearing the Diesel name on the website Groupon.  The Groupon website provides merchants with the opportunity to post their goods for sale, and actually sell, their products worldwide.

15.     Specifically, the Diesel representatives observed for sale a product labeled as the Diesel Men's Denim Regular Straight Fit: Larkee jeans, with a Dark Blue Faded finish, purportedly manufactured in Morocco.  A screenshot of the offer, as it appeared on the Groupon website on February 2, 2014, is attached as **Exhibit 2.**

16.     Diesel representatives were suspicious of the sale and requested that Groupon remove the offer from its website.  On or around February 4, 2014, before the sale was removed from the website, attorneys for Diesel purchased a pair of the jeans off of the Groupon website to be delivered in Washington, DC.  Upon information and belief, Groupon removed the sale from its website shortly thereafter.

17.     The jeans arrived in Washington, DC on February 7, 2014, and digital photographs were taken of the package and its contents.  A copy of the receipt and images of the package and its contents are attached as **Exhibit 3.**

18.     Upon inspection of the digital images of the product sold through Groupon, Antonella Gaudio, the Director of Purchasing and Procurement of Diesel USA, Inc, a wholly owned subsidiary of Diesel, determined that the jeans are counterfeit, based on their stitching, hangtags, interior clothing tags, and exterior clothing tags.  Specifically, the Diesel-branded jeans bore counterfeit reproductions of the word mark DIESEL in addition to Diesel's other trademarks.  The declaration of Antonella Guadio is attached hereto as **Exhibit 4**.

19.     Diesel completed and forwarded to Groupon a Claimed Infringement Notice Form requesting the seller's information.  Diesel learned that Defendant Howard Colton of Colton International was the merchant responsible for the sale of the infringing merchandise on the Groupon Website and was specifically responsible for sale of the jeans to Diesel's attorney in Washington, DC.  The jeans are no longer for sale on the Groupon website, but upon information and belief, they are still in the Defendants' possession.

20.     Upon information and belief, Defendant Howard Colton, as the owner of Colton International, is the active, moving, and conscious force behind the alleged infringing activities.

21.     None of the above-named Defendants are authorized by Diesel to manufacture, distribute, advertise, offer for sale, and/or sell merchandise bearing any of Diesel's trademarks.

## FIRST CLAIM FOR RELIEF

### (Trademark Counterfeiting – 15 U.S.C. § 1114)

21.     Diesel hereby repeats each and every allegation set forth in the foregoing paragraphs.

22.     Sections 32(1)(a) and (b) of the Lanham Act, 15 U.S.C. § 1114(1)(a) and (b), provide, in relevant part, that any person who shall, without the consent of the registrant:

> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or

advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive;

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive...shall be liable in a civil action by the registrant for the remedies hereinafter provided.

23.     Defendants have willfully and intentionally and in bad faith used numerous designations that are counterfeits of the registered Diesel Marks on goods for which the Plaintiff holds federal trademark registrations.

24.     Diesel has not authorized the Defendants' use of any of the Diesel Marks to advertise, offer for sale, sell and/or distribute Defendants' Counterfeit Products.

25.     The Defendants' unauthorized use of the Diesel Marks on or in connection with the advertising and sale of goods constitutes the use of the Plaintiff's registered marks in commerce.

26.     The Defendants' unauthorized use of the Diesel Marks is likely to cause confusion, mistake, or deception; cause the public to believe that Defendants' products are authorized, sponsored or approved by Diesel when they are not; and result in the Defendants unfairly and illegally benefitting from Diesel's goodwill.

27.     Accordingly, the Defendants have engaged in trademark counterfeiting in violation of Sections 32(1)(a) and (b) of the Lanham Act, 15 U.S.C. § 1114(1)(a) and (b), and are liable to Diesel for all damages related thereto, including but not limited to actual damages, infringing profits and/or statutory damages, as well as attorney's fees.

28.     The Defendants' acts have caused, and will continue to cause, irreparable injury to Diesel.

7

29.     Diesel has no adequate remedy at law and is thus entitled to damages in an amount yet to be determined.

30.     The Defendants' egregious conduct in repeatedly selling counterfeit merchandise bearing the unauthorized Diesel Marks is willful and intentional, and is carried out in bad faith, and thus this constitutes an exceptional case, warranting statutory and/or treble damages.

## SECOND CLAIM FOR RELIEF

### (Federal Trademark Infringement – 15 U.S.C. § 1114(1))

31.     Diesel hereby repeats each and every allegation set forth in the foregoing paragraphs.

32.     Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a), prohibits any person from using in commerce, without the consent of the registrant:

> any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . .

33.     The Diesel Marks are federally registered.  These trademarks are distinctive and are associated in the mind of the public with Diesel.

34.     Additionally, based on Diesel's extensive advertising, sales, and the popularity of its respective products, the Diesel Marks have acquired secondary meaning so that the public associates these trademarks exclusively with Diesel.

35.     The Defendants have used counterfeit reproductions of one or more of the Diesel Marks in connection with the advertising, sale, offering for sale and/or distribution of goods for their own financial gain.

36.     Diesel has not authorized the Defendants' use of any of the Diesel Marks.

37.     The Defendants' unauthorized use of the Diesel Marks on or in connection with the advertising and sale of goods constitutes the use of Plaintiff's registered marks in commerce.

38.     The Defendants' unauthorized use of the Diesel Marks is likely to cause confusion, mistake, or deception; cause the public to believe that the Defendants' products emanate or originate from Diesel when they do not, or that Diesel has authorized, sponsored, approved or otherwise associated itself with the Defendants or their counterfeit products bearing the Diesel Marks.

39.     The Defendants' unauthorized use of the Diesel Marks has resulted in the Defendants unfairly and illegally benefitting from Diesel's goodwill. This has caused substantial and irreparable injury to the public, Diesel, the Diesel Marks, and the substantial goodwill represented thereby.

40.     Accordingly, the Defendants have engaged in trademark infringement in violation of 15 U.S.C. § 1114.

41.     The Defendants' acts have caused, and will continue to cause, irreparable injury to Diesel.

42.     Diesel has no adequate remedy at law and is thus entitled to damages in an amount yet to be determined.

43.     The Defendants' egregious conduct in repeatedly selling infringing merchandise bearing the unauthorized Diesel Marks is willful and intentional, is carried out in bad faith, and thus this constitutes an exceptional case, warranting statutory and/or treble damages.

## THIRD CLAIM FOR RELIEF

### (False Designation of Origin– 15 U.S.C. § 1125(a))

44.     Diesel hereby repeats each and every allegation set forth in the foregoing

paragraphs.

45.     Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) provides, in relevant part,

that:

> Any person who, on or in connection with any goods or services, or any container for
> goods, uses in commerce any word, term, name, symbol, or device, or any
> combination thereof, or any false designation of origin, false or misleading
> description of fact, or false or misleading representation of fact, which—(1)(a) is
> likely to cause confusion, or to cause mistake, or to deceive as to the affiliation,
> connection, or association of such person with another person, or as to the origin,
> sponsorship, or approval of his or her goods, services, or commercial activities by
> another person . . . shall be liable in a civil action by any person who believes that he
> or she is or is likely to be damaged by such act.

46.     By making unauthorized use, in interstate commerce, of the Diesel Marks, the

Defendants have used a "false designation of origin" that is likely to cause confusion, mistake or

deception as to the affiliation or connection of the Defendants with Diesel and as to the origin,

sponsorship, association or approval of the Defendants' services and goods by Diesel, in

violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

47.     The Defendants' acts constitute the use in commerce of false designations of

origin and false and/or misleading descriptions or representations, tending to falsely or

misleadingly describe and/or represent the Defendants' products as those of Diesel, in violation

of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

48.     The Defendants' wrongful acts will continue unless and until enjoined by this

Court.

10

49.     The Defendants' acts have caused and will continue to cause irreparable injury to Diesel. Diesel has no adequate remedy at law and is thus damaged in an amount yet to be determined.

50.     The Defendants' egregious conduct in selling infringing merchandise is willful and intentional and is carried out in bad faith.

## FOURTH CLAIM FOR RELIEF

### (Federal Trademark Dilution – 15 U.S.C. § 1125(c))

51.     Diesel hereby repeats each and every allegation set forth in the foregoing paragraphs.

52.     Section 43(c)(1) of the Lanham Act, 15 U.S.C. § 1125(c)(1), provides, in relevant part, that:

> Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

53.     Diesel is the exclusive owner of the Diesel Marks.

54.     The Diesel Marks are famous and distinctive within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

55.     The Diesel Marks are all distinctive marks that have been in use for many years and play a prominent role in Diesel's marketing, advertising and the popularity of its products across many different media.

56.     The Diesel Marks were famous long before the Defendants began using unauthorized reproductions, counterfeits, copies and colorable imitations of the Diesel Marks on their unauthorized merchandise.

57.     The Diesel Marks have gained widespread publicity and public recognition in the District of Columbia and elsewhere.

58.     To enhance its rights further, Diesel obtained federal registrations for the Diesel Marks.

59.     The Defendants' sale of goods that use the Diesel Marks constitutes use in commerce of the Diesel Marks.

60.     Diesel has not licensed or otherwise authorized the Defendants' use of the Diesel Marks.

61.     Consumers are likely to purchase the Defendants' products in the erroneous belief that the Defendants are associated with, sponsored by or affiliated with Diesel, or that Diesel is the source of those products.

62.     The Defendants' use of the Diesel Marks dilutes and/or is likely to dilute the distinctive quality of those marks and to lessen the capacity of such marks to identify and distinguish Diesel's goods. The Defendants' unlawful use of the Diesel Marks in connection with inferior goods is also likely to tarnish those trademarks and cause blurring in the minds of consumers between Diesel and the Defendants, thereby lessening the value of the Diesel Marks as unique identifiers of Diesel's products.

63.     The Defendants' acts have caused and will continue to cause irreparable injury to Diesel. Diesel has no adequate remedy at law and is thus damaged in an amount yet to be determined.

## FIFTH CLAIM FOR RELIEF

**(Trademark Infringement in Violation of District of Columbia Common Law)**

64.     Diesel hereby repeats each and every allegation set forth in the foregoing paragraphs.

65.     The Plaintiff owns all right, title and interest in and to the Diesel Marks as described above, including all common law rights in the Diesel Marks.

66.     The products sold by the Defendants incorporate imitations of Diesel's common law trademarks. The Defendants' use of the Diesel Marks is unauthorized, and is substantially likely to cause consumer confusion.

67.     By the acts described above, the Defendants have engaged in trademark infringement in violation of the common law of the District of Columbia.

68.     The Defendants' acts have caused, and will continue to cause, irreparable injury to Diesel. Diesel has no adequate remedy at law and is thus damaged in an amount not yet determined.

## SIXTH CLAIM FOR RELIEF

**(Unfair Competition in Violation of District of Columbia Common Law)**

69.     Diesel hereby repeats each and every allegation set forth in the foregoing paragraphs.

70.     The Defendants have willfully and in conscious disregard of Diesel's rights, palmed off their goods as Diesel's, improperly trading upon the Plaintiff's goodwill and valuable rights in and to the Diesel Marks.

71.     The Defendants' unauthorized use of Plaintiff's Diesel Marks constitutes unfair competition because it is likely to cause confusion, mistake or deception as to the source, origin,

affiliation, connection or association of Defendants' products, services and business activities. Defendants' acts are substantially likely to cause customers to believe falsely that Defendants' products are affiliated, connected, or associated with the Plaintiff.

72.     By the acts described above, the Defendants have engaged in unfair competition in violation of the common law of the District of Columbia.

73.     The Defendants' acts have caused and will continue to cause irreparable injury to Diesel. Diesel has no adequate remedy at law and is thus damaged in an amount yet to be determined.

## **PRAYER FOR REL1EF**

**WHEREFORE**, the Plaintiff prays:

74.     For a FINAL JUDGMENT that:

a.     The Defendants have engaged in trademark counterfeiting and infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114;

b.     The Defendants have violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

c.     The Defendants have violated Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c);

d.     The Defendants have engaged in trademark infringement in violation of the common law of the District of Columbia;

e.     The Defendants have engaged in unfair competition in violation of the common law of the District of Columbia; and

f.      That the above acts were done willfully, and/or intentionally, and in bad

faith.

75.    For entry of an **ORDER** permanently enjoining and restraining the Defendants,

and their officers, agents, servants, employees and attorneys and all those in active concert or

participation with any of them, from:

a.      Using any reproduction, counterfeit, copy or colorable imitation of the

Diesel Marks (as defined herein) for and in connection with any goods not

authorized by Diesel;

b.      Engaging in any course of conduct likely to cause confusion, deception or

mistake, or to injure Plaintiff's business reputation or dilute the distinctive

quality of the Diesel Marks;

c.      Using any false description or representation, including words or other

symbols tending falsely to describe or represent Defendants' unauthorized

goods or their packaging as being those of Diesel, or sponsored by or

associated with Diesel, and from offering such goods into commerce;

d.      Further infringing the Diesel Marks by manufacturing, producing,

distributing, circulating, selling, marketing, offering for sale, advertising,

promoting, renting, displaying or otherwise disposing of any products or

their packaging not authorized by Diesel that bear any simulation,

reproduction, counterfeit, copy or colorable imitation of the Diesel Marks;

e.      Using any simulation, reproduction, counterfeit, copy or colorable

imitation of the Diesel Marks in connection with the promotion,

advertisement, display, sale, offering for sale, manufacture, production,

circulation or distribution of any unauthorized products or their packaging

in such fashion as to relate or connect, or tend to relate or connect, such

products in any way to Diesel, or to any goods sold, manufactured,

sponsored or approved by, or connected with Diesel;

f.      Making any statement or representation whatsoever, or using any false

designation of origin or false description, or performing any act, which

may or is likely to lead the trade or public, or individual members thereof,

to believe that any products manufactured, distributed, or sold by the

Defendants are in any manner associated or connected with Diesel, or are

sold, manufactured, licensed, sponsored, approved or authorized by

Diesel;

g.      Infringing the Diesel Marks, or Plaintiff's rights therein, or using or

exploiting the Diesel Marks, or diluting the Diesel Marks;

h.      Secreting, destroying, altering, removing, or otherwise dealing with the

unauthorized products or records which contain any information relating

to the importing, manufacturing, producing, distributing, circulating,

selling, marketing, offering for sale, advertising, promoting, renting or

displaying of all unauthorized products which infringe or dilute the Diesel

Marks; and

i.      Effecting assignments or transfers, forming new entities or associations or

utilizing any other device for the purpose of circumventing or otherwise

avoiding the prohibitions set forth in any Final Judgment or Order in this

action; and

76.     For an entry of an **ORDER** directing that the Defendants deliver up for destruction to Diesel all unauthorized products, advertisements and packaging in their possession or under their control bearing any of the Diesel Marks or any simulation, reproduction, counterfeit, copy or colorable imitation thereof, and all plates, molds, matrices and other means of production of same pursuant to 15 U.S.C. § 1118.

77.     For entry of an **ORDER** requiring the Defendants to disseminate corrective advertisements in a form approved by the Court to acknowledge their violations of the law hereunder, and to ameliorate the false and deceptive impressions produced by such violations.

78.     For all such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that any products or associated packaging manufactured, sold or otherwise circulated or promoted by the Defendants are authorized by Diesel or related in any way to Diesel's products.

79.     For an assessment of the **ACTUAL DAMAGES** suffered by Diesel, trebled, and an award of all profits that Defendants have derived from using the Diesel Marks, trebled, as well as costs and attorneys' fees to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117.

80.     Alternatively, that Diesel be awarded **STATUTORY DAMAGES** pursuant to 15 U.S.C. § 1117 in the maximum amount available under the law, plus reasonable attorneys' fees and costs; and awarding profits, damages and fees, under the common law; and punitive damages to the full extent available under the common law.

81.     For **COSTS OF SUIT**, and for such other and further relief as the Court shall deem appropriate.

## A TRIAL BY JURY IS DEMANDED

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiff hereby demands a jury trial on all triable issues raised by this Complaint.


Dated: June 24, 2014                              Respectfully submitted,


                                                   /s/ Leah C. Montesano
                                                  Randall A. Brater (DC Bar No. 475419)
                                                  Leah C. Montesano (DC Bar No. 978863)
                                                  Emily S. Baver (admission pending)
                                                  ARENT FOX LLP
                                                  1717 K Street, NW
                                                  Washington, D.C. 20036-5342
                                                  Telephone: 202.857.6000
                                                  Facsimile:  202.857.6395
                                                  randall.brater@arentfox.com
                                                  leah.montesano@arentfox.com
                                                  emily.baver@arentfox.com

                                                  *Counsel for Plaintiff Diesel S.p.A.*